JAN 26 2026

IN THE CIRCUIT COURT
OF THE FOURTH JUDICIAL CIRCUIT
EFFINGHAM COUNTY, ILLINOIS

| | | |
|---|---|---|
| BENJAMIN SHELTON, | ) | |
| Plaintiff, | ) | 2025LA59 |
| v. | ) | |
| LINCOLN FINANCIAL GROUP, | ) | |
| Defendant. | ) | |

**ALIAS SUMMONS**

To each defendant: Lincoln Financial Group, 8801 Indian Hills Dr., Omaha, NE 68114.

You are summoned and required to file an answer in this case, or otherwise file your appearance in the Office of the Clerk of this Court, Effingham County Courthouse, Effingham, Illinois, within 30 days after service of this summons, not counting the day of service. IF YOU FAIL TO DO SO, A JUDGMENT OR DECREE BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit https://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

To the officer:

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fee, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed.

This summons may not be served later than 30 days after its date.

FOURTH JUDICIAL CIRCUIT COURT EFFINGHAM COUNTY ILLINOIS

(Seal of Court)

WITNESS 1/22/2026, 20____

Tammy Kreke

(Clerk of the Circuit Court) JB

By: ____________________

(Plaintiff's attorney or plaintiff if he is not represented by an attorney)

Christopher A. Koester of Taylor Law Offices, P.C.
Attorney for Plaintiff
122 East Washington Avenue, P.O. Box 668
Effingham, Illinois 62401
(217) 342-3925
koester@taylorlaw.net

Date of service ____________________, 20____

EXHIBIT

A

(To be inserted by officer on copy left with defendant or other person)
*(Defendant must appear not less than 7 nor more than 40 days after issuance of the summons)

SHERIFF'S FEES: Service and return $__________

Miles __________ __________

Total $__________

____________________

Sheriff of ____________________ County

I certify that I served this summons on defendants as follows:

(a)-(Individual defendants - personal):
(The officer or other person making service, shall (a) identify as to sex, race and approximate age of the defendant with whom he left the summons, and (b) state the place where (whenever possible in terms of an exact street address) and the date and time of the day when the summons was left with the defendant.)

________________________________________

________________________________________

(b)-(Individual defendants - abode):
By leaving a copy of this summons and a copy of the complaint at the usual place of abode of each individual defendant with a person of his family, of the age of 13 years or upwards, informing that person of the contents of the summons.

(The officer or other person making service, shall (a) identify as to sex, race and approximate age of the person, other than the defendant, with whom he left the summons, and (b) state the place where (whenever possible in terms of an exact street address) and the date and time of day when the summons was left with such person.)

________________________________________

________________________________________

And also by sending a copy of the summons and of the complaint in a sealed envelope with postage fully prepaid, addressed to each individual defendant at his usual place of abode, as follows:

| Name of Defendant | Mailing Address | Date of mailing |
|---|---|---|
| | | |
| | | |

(c)-(Corporation defendants)
By leaving a copy of this summons and a copy of the complaint with the registered agent, officer or agent of each defendant corporation, as follows:

| Defendant Corporation | Registered Agent, officer or agent | Date of service |
|---|---|---|
| | | |
| | | |

(d)-(Other service): ____________________

_______________ Sheriff of ____________________ County

By: ____________________
(Deputy)

FILED
Effingham Co. Circuit Court
4th Judicial Circuit
Date: 12/23/2025 2:35 PM
Tammy Kreke

**IN THE CIRCUIT COURT
OF THE FOURTH JUDICIAL CIRCUIT
EFFINGHAM COUNTY, ILLINOIS**

| | | |
|---|---|---|
| BENJAMIN SHELTON, | ) | |
| | ) | |
| Plaintiff, | ) | 2025LA59 |
| | ) | |
| v. | ) | |
| | ) | |
| LINCOLN FINANCIAL GROUP, | ) | |
| | ) | **JURY DEMAND** |
| Defendant. | ) | |

## COMPLAINT

NOW COMES Plaintiff, Benjamin Shelton, by Christopher a Koester of Taylor law Offices, P.C., and as and for his Complaint against the Defendant, Lincoln Financial Group, states:

1. The Plaintiff is an insured under a long-term disability policy provided by the Defendant. See Policy attached hereto as Exhibit A.

2. The Defendant was incorporated in Indiana and is licensed to conduct business in Illinois.

3. On March 26, 2019, Plaintiff became disabled and commenced receiving long-term benefits pursuant to the terms of his policy.

4. On September 2, 2021, the Defendant wrongfully terminated Plaintiff's long-term disability benefits based upon Plaintiff's purported ability to "work as a surveillance system monitor." Defendant utilized obsolete data from 1991 to make its unilateral determination that Plaintiff was physically able to work as a surveillance system monitor. See report of Linda L. Jones, Senior Vocational Economic Analysis, attached hereto and incorporated by reference as Exhibit B.

5. On February 15, 2022, Plaintiff appealed the decision to terminate benefits.

6. On December 19, 2022, Plaintiff received a letter from the Social Security Administration confirming that he was disabled and was awarded a lump-sum check for benefits from June 2021 through September 2022.

7. On December 21, 2022, Defendant notified Plaintiff that he was required to repay Defendant for benefits received from June 2021 through September 2022.

8. On February 21, 2023, Defendant notified Plaintiff that they intended to "apply Plaintiff's disability benefit to the overpayment until the balance of $15,468.13 is paid in full."

9. On June 27, 2023, Defendant requested medical information from Plaintiff which supported Plaintiff's disability claim.

10. On August 3, 2023, Plaintiff provided Defendant with the requested information regarding his medical condition.

11. On November 28, 2023, Defendant again denied payment of long-term benefits to Plaintiff. That decision was appealed on December 1, 2023.

12. On March 4, 2024, Defendant provided Plaintiff with an IME report from Dr. Charles Brock which confirmed that Plaintiff was disabled under the policy in question.

13. On March 14, 2024, Plaintiff requested immediate reinstatement of benefits retroactive to the initial date of termination of benefits.

14. On March 18, 2025, Defendant notified Plaintiff that, notwithstanding his confirmed disabilities as outlined by Social Security and Defendant's own IME, Plaintiff was again being denied benefits because he could obtain employment as a "surveillance system monitor."

15. On June 18, 2024, Plaintiff provided Defendant with the report from Linda L. Jones, MRC, MBA, MPA, Senior Vocational-Economic Analyst. Ms. Jones opined that Plaintiff was

disabled under the terms of the policy and that the purported occupation of "surveillance system monitor" has been obsolete since 1991.

16. Pursuant to the terms of the policy, Defendant is required to pay long-term disability benefits to the Plaintiff. Defendant has breached its contractual obligation to pay said benefits based upon the pretextual conclusion that Plaintiff is able to work in the current labor market as a surveillance system monitor.

17. As a direct and proximate result of Defendant's breach of its contract, Plaintiff has incurred damages including, but not limited to, a loss of monthly contractual benefits and has incurred collection and interest charges associated with his inability to pay his monthly expenses.

WHEREFORE, the Plaintiff, Benjamin Shelton, prays that this Court enter judgment in favor of the Plaintiff and against the Defendant, Lincoln Financial Group, in an amount necessary to compensate him for his loss of benefits, penalties associated with the unreasonable, vexatious and bad faith handling of this claim under 215 ILCS 155, interest charges, attorney's fees, and all other damages incurred by Plaintiff in connection with Defendant's breach of the provision of the long term disability policy.

Respectfully submitted,
BENJAMIN SHELTON, Plaintiff
By: /s/ *Christopher A. Koester*

Christopher A. Koester
Taylor Law Offices, P.C.
Attorney for Plaintiff
P.O. Box 668
Effingham, Illinois 62401
(217) 342-3925
koester@taylorlaw.net

Liberty Mutual
INSURANCE

Liberty Life Assurance Company of Boston

# GROUP DISABILITY INCOME POLICY

**Sponsor:** **Quad/Graphics, Inc**

**Policy Number:** **GF3-840-444752-01**

**Effective Date:** **June 1, 2016**

**Governing Jurisdiction** is **Wisconsin** and subject to the laws of that State.

**Premiums** are due and payable monthly on the first day of each month.

**Policy Anniversaries** shall occur each June 1st beginning in 2017.

Liberty Life Assurance Company of Boston (hereinafter referred to as Liberty) agrees to pay benefits provided by this policy in accordance with its provisions. This policy provides Long Term Disability coverage.

**PLEASE READ THIS POLICY CAREFULLY FOR FULL DETAILS.**

This policy is a legal contract and is issued in consideration of the Application of the Sponsor, a copy of which is attached, and of the payment of premiums by the Sponsor.

For purposes of this policy, the Sponsor acts on its own behalf or as the Covered Person's agent. Under no circumstances will the Sponsor be deemed the agent of Liberty.

This policy is delivered in and governed by the laws of the governing jurisdiction and to the extent applicable by The Employee Retirement Income Security Act of 1974 (ERISA) and any subsequent amendments.

The following pages including any amendments, riders or endorsements are a part of this policy.

Signed at Liberty's Home Office, 175 Berkeley Street, Boston, Massachusetts, 02116

SECRETARY PRESIDENT

**NON-PARTICIPATING**

**FORM ADOP**

**EXHIBIT A**

# TABLE OF CONTENTS

SECTION 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SCHEDULE OF BENEFITS

SECTION 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . DEFINITIONS

SECTION 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ELIGIBILITY AND EFFECTIVE DATES

SECTION 4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . DISABILITY INCOME BENEFITS

SECTION 5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . EXCLUSIONS

SECTION 6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TERMINATION PROVISIONS

SECTION 7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . GENERAL PROVISIONS

SECTION 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PREMIUMS

SECTION 9. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . APPLICATION

# SECTION 1 - SCHEDULE OF BENEFITS

## ELIGIBILITY REQUIREMENTS FOR INSURANCE BENEFITS

**Minimum Hourly Requirement:**

Employees who work a regular schedule each week as determined by the Sponsor

**Long Term Disability Benefits:**

Class 1: All active, full-time and part-time management Employees excluding Atglen union, Waukee union and Hazelton union Employees

Class 2: All active, full-time and part-time non-management Employees excluding Atglen union, Waukee union and Hazelton union Employees

Class 3: All active, full-time and part-time Atglen union Employees subject to a collective bargaining unit

Class 4: All active, full-time and part-time Waukee union Employees subject to a collective bargaining agreement

Class 5: All active, full-time and part-time Hazleton union Employees subject to a collective bargaining agreement

**Note:** This policy does not cover the following Employees: Temporary and seasonal Employees, and Employees who are not legal residents working in the United States.

**Eligibility Waiting Period:**

Applicable to Class 1, 2, 3

1. If the Covered Person is employed by the Sponsor on the policy effective date - 60 days of continuous, Active Employment

2. If the Covered Person begins employment for the Sponsor after the policy effective date - 60 days of continuous, Active Employment

   Note: Prior Service Credit will be applied to the Eligibility Waiting Period for an Employee who is reinstated in less than 60 days following a reduction in force.

Applicable to Class 4

1. If the Covered Person is employed by the Sponsor on the policy effective date - First of the month following 450 hours of continuous, Active Employment

2. If the Covered Person begins employment for the Sponsor after the policy effective date - First of the month following 450 hours of continuous, Active Employment

   Note: Prior Service Credit will be applied to the Eligibility Waiting Period for an Employee who is reinstated in less than 60 days following a reduction in force.

Applicable to Class 5

1. If the Covered Person is employed by the Sponsor on the policy effective date - first of the month following 90 days of continuous, Active Employment

2. If the Covered Person begins employment for the Sponsor after the policy effective date - first of the month following 90 days of continuous, Active Employment

   Note: Prior Service Credit will be applied to the Eligibility Waiting Period for an Employee who is reinstated in less than 60 days following a reduction in force.

**Employee Contributions Required:**

Applicable to Class 1, 2, 4, 5

Yes

Applicable to Class 3

No

## SECTION 1 - SCHEDULE OF BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE**

**Elimination Period:**

Applicable to Class 1, 2, 4, 5:

90 days

Applicable to Class 3:

180 days

**Amount of Insurance:**

Applicable to Class 1, 2, 4, 5:

60.00% of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $7,500.00 less Other Income Benefits and Other Income Earnings as outlined in Section 4.

Applicable to Class 3:

60.00% of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $10,000.00 less Other Income Benefits and Other Income Earnings as outlined in Section 4.

**Maximum Basic Monthly Earnings on which the Benefit is Based:**

| | |
|---|---|
| Applicable to Class 1, 2, 4, 5: | $12,500.00 |
| Applicable to Class 3: | $16,667.00 |

**Own Job Duration:**

Applicable to Class 1:

36 Month Own Job

Applicable to Class 2, 4, 5:

24 Month Own Job

Applicable to Class 3:

12 Month Own Job

# SECTION 1 - SCHEDULE OF BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Minimum Monthly Benefit:**

The Minimum Monthly Benefit is $50.00 or 15.00% of the Covered Person's Gross Monthly Benefit, whichever is greater.

**Maximum Benefit Period:**

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than age 60 | Greater of SSNRA* or to age 65 (but not less than 5 years) |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and over | 12 months |

* SSNRA means the Social Security Normal Retirement Age as figured by the 1983 amendment to the Social Security Act and any subsequent amendments and provides:

| Year of Birth | Normal Retirement Age |
|---|---|
| Before 1938 | 65 |
| 1938 | 65 and 2 months |
| 1939 | 65 and 4 months |
| 1940 | 65 and 6 months |
| 1941 | 65 and 8 months |
| 1942 | 65 and 10 months |
| 1943-1954 | 66 |
| 1955 | 66 and 2 months |
| 1956 | 66 and 4 months |
| 1957 | 66 and 6 months |
| 1958 | 66 and 8 months |
| 1959 | 66 and 10 months |
| 1960 and after | 67 |

# SECTION 2 - DEFINITIONS

In this section Liberty defines some basic terms needed to understand this policy. The male pronoun whenever used in this policy includes the female.

**"Active Employment"** means the Employee must be actively at work for the Sponsor:

1. on a full-time or part-time basis and paid regular earnings;

2. for at least the minimum number of hours shown in the Schedule of Benefits; and either perform such work:

   a. at the Sponsor's usual place of business; or
   b. at a location to which the Sponsor's business requires the Employee to travel.

An Employee will be considered actively at work if he was actually at work on the day immediately preceding:

1. a weekend (except where one or both of these days are scheduled work days);
2. holidays (except when the holiday is a scheduled work day);
3. paid vacations;
4. any non-scheduled work day;
5. an excused leave of absence (except medical leave for the Covered Person's own disabling condition and lay-off); and
6. an emergency leave of absence (except emergency medical leave for the Covered Person's own disabling condition).

**"Administrative Office"** means Liberty Life Assurance Company of Boston, 9 Riverside Road, Weston, MA 02493.

**"Annual Enrollment Period"** or **"Enrollment Period"** means the period before each policy anniversary so designated by the Sponsor and Liberty during which an Employee may enroll for coverage under this policy.

## SECTION 2 - DEFINITIONS
(Continued)

**"Any Job"** means any job that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.

**"Application"** is the document designated in Section 9; it is attached to and is made a part of this policy.

**"Appropriate Available Treatment"** means care or services which are:

1. generally acknowledged by Physicians to cure, correct, limit, treat or manage the disabling condition;
2. accessible within the Covered Person's geographical region;
3. provided by a Physician who is licensed and qualified in a discipline suitable to treat the disabling Injury or Sickness;
4. in accordance with generally accepted medical standards of practice.

**"Basic Monthly Earnings"** means the Covered Person's monthly rate of earnings from the Sponsor in effect immediately prior to the date Disability or Partial Disability begins. However, such earnings will not include bonuses, commissions, overtime pay and extra compensation.

**"Consumer Price Index"** means the government publication "The Consumer Price Index for Urban Wage Earners and Clerical Workers" provided monthly by the U.S. Department of Labor, or its successor or in the event of no successor a similar Index of comparable purpose chosen by Liberty.

**"Covered Person"** means an Employee insured under this policy.

## SECTION 2 - DEFINITIONS
(Continued)

**"Disability"** or **"Disabled"** means:

1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:

Applicable to Class 1:

a. i. if the Covered Person is eligible for the 36 Month Own Job benefit, **"Disability"** or **"Disabled"** means that during the Elimination Period and the next 36 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Job; and

ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Job.

Applicable to Class 2, 4, 5:

a. i. if the Covered Person is eligible for the 24 Month Own Job benefit, **"Disability"** or **"Disabled"** means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Job; and

ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Job.

Applicable to Class 3:

a. i. if the Covered Person is eligible for the 12 Month Own Job benefit, **"Disability"** or **"Disabled"** means that during the Elimination Period and the next 12 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Job; and

ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Job.

2. With respect to Covered Persons employed as pilots, co-pilots and crewmembers of an aircraft:

**"Disability"** or **"Disabled"** means as a result of Injury or Sickness the Covered Person is unable to perform the Material and Substantial Duties of Any Job.

**"Disability Benefits under a Retirement Plan"** means money which:

1. is payable under a Retirement Plan due to Disability as defined in that plan; and
2. does not reduce the amount of money which would have been paid as retirement benefits at the normal retirement age under the plan if the Disability had not occurred. (If the payment does cause such a reduction, it will be deemed a Retirement Benefit as defined in this policy.)

## SECTION 2 - DEFINITIONS
(Continued)

**"Domestic Partner"** means an unmarried person of the same or opposite sex with whom the Covered Person shares a committed relationship, are jointly responsible for each other's welfare and financial obligations, at least 18 years of age and mentally competent to consent to a contract, not related by blood to a degree that could prohibit legal marriage in the state where they legally reside, maintain the same residence(s) and are not married to or legally separated from anyone else. A Domestic Partner certification must be completed and filed with the Sponsor before the partner can be designated as an Eligible Survivor.

**"Eligibility Date"** means the date an Employee becomes eligible for insurance under this policy. Eligibility Requirements are shown in the Schedule of Benefits.

**"Eligible Survivor"** means the Covered Person's spouse or Domestic Partner, if living, otherwise the Covered Person's children under age 26.

**"Eligibility Waiting Period"** means the continuous length of time an Employee must be in Active Employment in an eligible class to reach his Eligibility Date.

**"Elimination Period"** means a period of consecutive days of Disability or Partial Disability for which no benefit is payable. The Elimination Period is shown in the Schedule of Benefits and begins on the first day of Disability.

If the Covered Person returns to work for any forty five or fewer days during the Elimination Period and cannot continue, Liberty will count only those days the Covered Person is Disabled or Partially Disabled to satisfy the Elimination Period.

**"Employee"** means a person in Active Employment with the Sponsor.

**"Enrollment Form"** is the document completed by the Covered Person, if required, when enrolling for coverage. This form must be satisfactory to Liberty.

**"Evidence of Insurability"** means a statement of proof of an Employee's medical history upon which acceptance for insurance will be determined by Liberty.

## SECTION 2 - DEFINITIONS
(Continued)

**"Extended Treatment Plan"** means continued care that is consistent with the American Psychiatric Association's standard principles of Treatment, and is in lieu of confinement in a Hospital or Institution. It must be approved in writing by a Physician.

**"Family and Medical Leave"** means a leave of absence for the birth, adoption or foster care of a child, or for the care of the Covered Person's child, spouse or parent or for the Covered Person's own serious health condition as those terms are defined by the Federal Family and Medical Leave Act of 1993 (FMLA) and any amendments, or by applicable state law.

Applicable to Class 1, 2, 4, 5:

**"Family Status Change"** means any one of the following events that may occur:

1. the Employee's marriage or divorce;
2. the Employee's filing or rescinding of a Domestic Partner certification;
3. the birth of a child to the Employee;
4. the adoption of a child by the Employee;
5. the death of the Employee's spouse or Domestic Partner or child;
6. the commencement or termination of employment of the Employee's spouse or Domestic Partner;
7. the change from part-time employment to full-time employment by the Employee or the Employee's spouse or Domestic Partner;
8. the change from full-time employment to part-time employment by the Employee or the Employee's spouse or Domestic Partner;
9. the taking of unpaid leave of absence by the Employee or the Employee's spouse or Domestic Partner.

**"Gross Monthly Benefit"** means the Covered Person's Monthly Benefit before any reduction for Other Income Benefits and Other Income Earnings.

**"Hospital"** or **"Institution"** means a facility licensed to provide Treatment for the condition causing the Covered Person's Disability.

## SECTION 2 - DEFINITIONS
(Continued)

**"Indexed Basic Monthly Earnings"** means the Covered Person's Basic Monthly Earnings in effect just prior to the date Disability or Partial Disability began adjusted on the first anniversary of benefit payments and each anniversary thereafter.

**"Initial Enrollment Period"** means one of the following periods during which an Employee may first enroll for coverage under this policy:

1. for an Employee who is eligible for insurance on the policy effective date, a period before the policy effective date set by the Sponsor and Liberty.

2. for an Employee who becomes eligible for insurance after the policy effective date, the period which ends 31 days after his Eligibility Date.

**"Injury"** means bodily impairment resulting directly from an accident and independently of all other causes. For the purpose of determining benefits under this policy:

1. any Disability which begins more than 60 days after an Injury will be considered a Sickness; and

2. any Injury which occurs before the Covered Person is covered under this policy, but which accounts for a medical condition that arises while the Covered Person is covered under this policy will be treated as a Sickness.

**"Last Monthly Benefit"** means the net Monthly Benefit payable to the Covered Person prior to his death.

**"Material and Substantial Duties"** means responsibilities that are normally required to perform the Covered Person's Own Job, or any other job, and cannot be reasonably eliminated or modified.

## SECTION 2 - DEFINITIONS
(Continued)

**"Mental Illness"** means a psychiatric or psychological condition classified as such in the most current edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) regardless of the underlying cause of the Mental Illness. If the DSM is discontinued, Liberty will use the replacement chosen or published by the American Psychiatric Association.

**"Monthly Benefit"** means the monthly amount payable by Liberty to the Disabled or Partially Disabled Covered Person.

**"Own Job"** means the Covered Person's job that he was performing when his Disability or Partial Disability began.

## SECTION 2 - DEFINITIONS
(Continued)

**"Partial Disability" or "Partially Disabled"** means the Covered Person, as a result of Injury or Sickness, is able to:

1. perform one or more, but not all, of the Material and Substantial Duties of his Own Job or Any Job on an Active Employment or a part-time basis; or

2. perform all of the Material and Substantial Duties of his Own Job or Any Job on a part-time basis; and

3. earn between 20.00% and 80.00% of his Basic Monthly Earnings.

**"Physician"** means a person who:

1. is licensed to practice medicine and is practicing within the terms of his license; or

2. is a licensed practitioner of the healing arts in a category specifically favored under the health insurance laws of the state where the Treatment is received and is practicing within the terms of his license.

It does not include a Covered Person, any family member or domestic partner.

## SECTION 2 - DEFINITIONS
(Continued)

**"Proof"** means the evidence in support of a claim for benefits and includes, but is not limited to, the following:

1. a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;

2. an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and

3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.

Proof must be submitted in a form or format satisfactory to Liberty.

**"Regular Attendance"** means the Covered Person's personal visits to a Physician which are medically necessary according to generally accepted medical standards to effectively manage and treat the Covered Person's Disability or Partial Disability.

**"Retirement Benefit under a Retirement Plan"** means money which:

1. is payable under a Retirement Plan either in a lump sum or in the form of periodic payments;

2. does not represent contributions made by an Employee (payments which represent Employee contributions are deemed to be received over the Employee's expected remaining life regardless of when such payments are actually received); and

3. is payable upon:

   a. early or normal retirement; or
   b. Disability, if the payment does reduce the amount of money which would have been paid under the plan at the normal retirement age.

## SECTION 2 - DEFINITIONS
(Continued)

**"Retirement Plan"** means a plan which provides retirement benefits to Employees and which is not funded wholly by Employee contributions. The term shall not include a profit-sharing plan, informal salary continuation plan, registered retirement savings plan, stock ownership plan, 401(K) or a non-qualified plan of deferred compensation.

**"Schedule of Benefits"** means the section of this policy which shows, among other things, the Eligibility Requirements, Eligibility Waiting Period, Elimination Period, Amount of Insurance, Minimum Benefit, and Maximum Benefit Period.

**"Sickness"** means illness, disease, pregnancy or complications of pregnancy.

**"Sponsor"** means the entity to whom this policy is issued.

**"Sponsor's Retirement Plan"** is deemed to include any Retirement Plan:

1. which is part of any Federal, State, Municipal or Association retirement system; or
2. for which the Employee is eligible as a result of employment with the Sponsor.

**"Substance Abuse"** means alcohol and/or drug abuse, addiction or dependency.

**"Treatment"** means consulting, receiving care or services provided by or under the direction of a Physician including diagnostic measures, being prescribed drugs and/or medicines, whether the Covered Person chooses to take them or not, and taking drugs and/or medicines.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES

**Applicable to Long Term Disability Class 3:**

**Eligibility Requirements for Insurance Benefits**

The eligibility requirements for insurance benefits are shown in the Schedule of Benefits.

**Eligibility Date for Insurance Benefits**

An Employee in an eligible class will qualify for insurance on the later of:

1. this policy's effective date; or
2. the day after the Employee completes the Eligibility Waiting Period shown in the Schedule of Benefits.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

**Applicable to Long Term Disability Class 3:**

**Effective Date of Insurance**

Insurance will be effective at 12:01 A.M. Standard Time in the governing jurisdiction on the day determined as follows, but only if the Employee's application or enrollment for insurance is made with Liberty through the Sponsor in a form or format satisfactory to Liberty.

An Employee will be insured on his Eligibility Date.

**Delayed Effective Date for Insurance**

The effective date of any initial, increased or additional insurance will be delayed for an individual if he is not in Active Employment because of Injury or Sickness. The initial, increased or additional insurance will begin on the date the individual returns to Active Employment.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES

**Applicable to Long Term Disability Class 1, 2, 4, 5:**

**Eligibility Requirements for Insurance Benefits**

The eligibility requirements for insurance benefits are shown in the Schedule of Benefits.

**Eligibility Date for Insurance Benefits**

An Employee in an eligible class will qualify for insurance on the later of:

1. this policy's effective date; or
2. the day after the Employee completes the Eligibility Waiting Period shown in the Schedule of Benefits.

**Initial Enrollment Period**

During the Initial Enrollment Period an Employee can enroll in any one coverage or coverage option shown in the Schedule of Benefits. If he does not choose any coverage or coverage option, he will not be enrolled for any coverage. If an Employee's Initial Enrollment Period takes place during or after the Annual Enrollment Period, but before the policy anniversary his coverage option will apply for (a) the rest of the policy year in which he first becomes eligible; and (b) the next policy year.

**Annual Enrollment Period**

During each Annual Enrollment Period, a Covered Person may keep his coverage at the same level or make one of the following changes in coverage for the next policy year:

1. a decrease in coverage;
2. an increase in coverage subject to Evidence of Insurability and the Pre-Existing Condition Exclusion defined herein.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

**Applicable to Long Term Disability Class 1, 2, 4, 5:**

**Family Status Change**

When an Employee experiences a Family Status Change, he may keep his coverage at the same level or make one of the following changes in coverage:

1. a decrease in coverage;

2. an increase in coverage subject to Evidence of Insurability and the Pre-Existing Condition Exclusion defined herein.

The Covered Person must apply for the change in coverage within 31 Days of the date of the Family Status Change. Such changes in coverage must be due to or consistent with the reason that the change in coverage was permitted. A change in coverage is consistent with a Family Status Change only if it is necessary or appropriate as the result of the Family Status Change.

**Effective Date of Insurance**

Insurance will be effective at 12:01 A.M. Standard Time in the governing jurisdiction on the day determined as follows, but only if the Employee's application or enrollment for insurance is made with Liberty through the Sponsor in a form or format satisfactory to Liberty.

1. For Coverage Applied for During Initial Enrollment Periods:

   a. an Employee will be insured on the date the Employee makes application for insurance if he enrolls on or before the 31st day after his Eligibility Date; or
   b. an Employee who does not enroll on or before the 31st day after his Eligibility Date, or terminated his insurance while continuing to be eligible must submit an application and Evidence of Insurability to Liberty for approval, at the Employee's expense. The Employee will be insured on the date Liberty gives its approval.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

**Applicable to Long Term Disability Class 1, 2, 4, 5:**

**Effective Date of Insurance** (Continued)

2. For Contributory Coverage Applied for During Annual Enrollment Periods

   An Employee will be insured for the selected contributory coverage on the later of these dates:

   a. the first day of the next policy anniversary; or
   b. the date Liberty gives its approval, if the Employee:

      i. increases his coverage option; or
      ii. terminated his insurance while continuing to be eligible.

   In the case of i. and ii. above, the Employee must submit an application and Evidence of Insurability to Liberty for approval. This will be at the Employee's expense.

3. For Coverage Applied for Due to a Family Status Change

   An Employee will be insured for the selected coverage on the later of the following dates, provided he applies or enrolls for the change in coverage before the end of the 31st Day following the Family Status Change:

   a. the date of the Family Status Change;
   b. the date the Employee applies or enrolls for the change in coverage; or
   c. the date Liberty gives its approval, if the Employee:

      i. increases his coverage option; or
      ii terminated his insurance while continuing to be eligible.

   In the case of i. and ii. above, the Employee must submit an application and Evidence of Insurability to Liberty for approval. This will be at the Employee's expense.

**Delayed Effective Date for Insurance**

The effective date of any initial, increased or additional insurance will be delayed for an individual if he is not in Active Employment because of Injury or Sickness. The initial, increased or additional insurance will begin on the date the individual returns to Active Employment.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

**Family and Medical Leave**

An Employee's coverage may be continued under this policy for an approved family or medical leave of absence for up to 12 weeks following the date coverage would have terminated, subject to the following:

1. the authorized leave is in writing;
2. the required premium is paid;
3. the Covered Person's benefit level, or the amount of earnings upon which the Covered Person's benefit may be based, will be that in effect on the date before said leave begins; and
4. continuation of coverage will cease immediately if any one of the following events should occur:
   a. the Covered Person returns to work;
   b. this group insurance policy terminates;
   c. the Covered Person is no longer in an eligible class;
   d. nonpayment of premium when due by the Sponsor or the Covered Person;
   e. the Covered Person's employment terminates.

**Rehire Terms**

If a former Employee is re-hired by the Sponsor within 60 days of his termination date, all past periods of Active Employment with the Sponsor will be used in determining the re-hired Employee's Eligibility Date. If a former Employee is re-hired by the Sponsor more than 60 days after his termination date, he is considered to be a new Employee when determining his Eligibility Date.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

**Leave of Absence**

The Sponsor may continue the Covered Person's coverage(s) by paying the required premiums, if the Covered Person is given a leave of absence

The Covered Person's coverage will not continue beyond a period of up to thirty-four weeks. In continuing such coverage under this provision, the Sponsor agrees to treat all Covered Persons equally.

**Lay-off**

The Sponsor may continue the Covered Person's coverage(s) by paying the required premiums, if the Covered Person is temporarily laid off

The Covered Person's coverage will not continue beyond a period of six months. In continuing such coverage under this provision, the Sponsor agrees to treat all Covered Persons equally.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

**Transfer Provision**

In order to prevent loss of coverage for an individual because of transfer of insurance carriers, this policy will provide coverage for certain individuals as follows:

**Failure to be In Active Employment Due to Injury or Sickness:**

Subject to premium payments, this policy will cover individuals who:

1. at the time of transfer are covered under the prior carrier's policy; and

2. are not in Active Employment due to Injury or Sickness on the effective date of this policy.

Benefits will be determined based on the lesser of:

1. the amount of the Disability benefit that would have been payable under the prior policy and subject to any applicable policy limitations; or

2. the amount of Disability benefits payable under this policy. If benefits are payable under the prior policy for the Disability, no benefits are payable under this policy.

**Disability Due to a Pre-Existing Condition**

If an individual was insured under the prior carrier's policy at the time of transfer and was in Active Employment and insured under this policy on its effective date, benefits may be payable for a Disability due to a Pre-Existing Condition.

If the individual can satisfy this policy's Pre-Existing Condition Exclusion, the benefit will be determined according to this policy.

If the individual cannot satisfy this policy's Pre-Existing Condition Exclusion, then:

1. Liberty will apply the Pre-Existing Condition Exclusion of the prior carrier's policy and;

2. if the individual would have satisfied the prior carrier's pre-existing condition exclusion, giving consideration towards continuous time coverage under this policy; and the prior carrier's policy, the benefit will be determined according to this policy. However, the Maximum Monthly Benefit amount payable under this policy shall not exceed the maximum monthly benefit payable under the prior carrier's policy.

No benefit will be paid if the individual cannot satisfy the Pre-Existing Condition Exclusions of either policy.

# SERVICE

abclegal

205157922

*MAIL TO*

**Yawa Nuasi**
1427 N 109th Plz 206
Omaha, NE 68154

**SERVE BY** 02/21/2026

JAN 26 2026

*SERVICE TO*

**Lincoln Financial Group**
8801 Indian Hills Dr
Omaha, NE 68114

**DOCUMENTS**

ALIAS SUMMONS; COMPLAINT

CUSTOMER **Taylor Law Offices, P.C.**
REF **20220298**
COURT **IL Circuit Court for Effingham County**
CASE# **2025LA59**
TITLE **Benjamin Shelton vs. Lincoln Financial Group**

**Need help?**
abclegal.
com/partnerresources

01/23/2026